## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANDREW PHILLIP IVERSON,

     Plaintiff,

                            Case No.

-vs-

TRANS UNION LLC and CENTRAL
RESEARCH, INC.,

     Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Andrew Phillip Iverson (hereinafter "Plaintiff"), by and through his undersigned counsel, for his cause of action against Defendants, Trans Union LLC (hereinafter "Trans Union"); and Central Research, Inc. (hereinafter "CRI") (hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

## PRELIMINARY STATEMENT

1.    This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the FCRA.

2.    Today in America there are three major consumer reporting agencies, Equifax Information Services LLC (hereinafter "Equifax"), Trans Union LLC

(hereinafter "Trans Union"), and Experian Information Solutions, Inc. (hereinafter "Experian") (hereinafter collectively "CRAs").

3.    Consumer reporting agencies that create consumer reports, like Trans Union, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities, particularly where a consumer makes a dispute about information reported.

4.    When a consumer like Plaintiff disputes information through the agencies, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5.    The Consumer Financial Protection Bureau has noted, "experience indicates that [Credit Reporting Agencies] lack incentives and under-invest in accuracy". Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION AND VENUE

6.    Jurisdiction for this Court is conferred by 28 U.S.C. § 1331, as this action involves violations of the FCRA.

7.      Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

8.      Venue is proper in this District as Plaintiff is a natural person and resident of Hillsborough County in the State of Florida; Defendants transact business within this District; and violations described in this Complaint occurred in this District.

9.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10.      Trans Union is a corporation with its principal place of business in the State of Illinois and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

11.      Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Trans Union is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

12.      Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

13.      CRI is a corporation with its principal place of business in the State of Arkansas and is authorized to do business in the State of Florida through its

3

registered agent, Corporation Creations Network, Inc., located at 801 US Highway 1, North Palm Beach, Florida 33408.

14.    CRI is a "furnisher of information" as that term is used in 15 U.S.C § 1681s-2.

15.    CRI furnished information about Plaintiff to Trans Union that was inaccurate.

## FACTUAL ALLEGATIONS

16.    Plaintiff is alleged to owe debts to CRI, partial account numbers ending in *2899 and *2999, as to student loans (hereinafter "CRI Accounts"). Plaintiff never applied or gave permission for anyone to open the CRI Accounts.

17.    Upon information and belief, Plaintiff is a victim of identity theft or a mixed file.

18.    Plaintiff first became aware of the CRI Accounts in or about April 2025, during a review of his credit file in preparation to apply for a new apartment.

19.    Plaintiff has never sought higher education and thus has never had student loans.

20.    Shortly after discovering the CRI Accounts, Plaintiff contacted CRI to dispute the fraud. Plaintiff was told by CRI that the loans were used at Baltimore Community College in Baltimore, Maryland.

21.    Plaintiff has never lived nor attended school in Maryland.

22.     Plaintiff contacted Baltimore Community College for more information, but the school was unable to locate any records with his name or personal identifying information.

23.     On or about the beginning of April 2025, Plaintiff filed a complaint with the Consumer Financial Protection Bureau, Complaint No. 250406-19901815 (hereinafter "CFPB Complaint") to report the fraud.

24.     Under 15 U.S.C. § 1681i(e)(3) of the FCRA, credit reporting agencies such as Trans Union are required to review certain consumer complaints about inaccurate information that are originally sent to the CFPB. Upon information and belief, Trans Union and CRI received Plaintiff's CFPB Complaint.

25.     Upon information and belief, Trans Union failed to review the CFPB Complaint that Plaintiff filed and continued to report the CRI Accounts on his credit report. CRI also failed to conduct an investigation based on Plaintiff's CFPB complaint.

26.     On or about April 30, 2025, Plaintiff submitted a False Certification: Identity Theft application to CRI to request for the CRI Accounts to be discharged. Along with his application, Plaintiff submitted copies of his identification via email to CRI.

27.     On or about June 1, 2025, Plaintiff contacted the Hillsborough County Sheriff's Office to report identity theft and filed a general offense report GO# HS 2025-5004089.

28.     Following the Hillsborough County Sheriff's Office's advice, Plaintiff also contacted the Baltimore Police Department to file a report but was not successful.

29.     On or about August 1, 2025, Plaintiff obtained a copy of his Equifax credit report and observed that the CRI Accounts continued to be reported with statuses of 90 days past due. The CRI Account ending in *2899 reflected a balance of $3,617 and the CRI Account ending in *2999 reflected a balance of $6,409. Plaintiff also observed a Frederick, Maryland address that did not belong to him.

30.     That same day, Plaintiff attempted to obtain a copy of his Trans Union but was unsuccessful as Trans Union could not verify his identity. Upon information and belief, Trans Union was also reporting the CRI Accounts.

31.     On or about August 22, 2025, Plaintiff filed an Identity Theft Report with the Federal Trade Commission, Report No. 190119417 (hereinafter "FTC Report"). In the report, Plaintiff explained that he was a victim of identity theft and that the CRI Accounts were fraudulently opened.

32.     On or about August 22, 2025, Plaintiff mailed a detailed dispute letter to Trans Union explaining that the CRI Accounts were fraudulent and requesting that

they be deleted from his credit file. Plaintiff also advised that the Frederick, Maryland address listed on his report did not belong to him. In the letter, Plaintiff requested a copy of his credit report. To confirm his identity, Plaintiff attached copies of his Florida driver's license and social security card. Plaintiff also attached images of the erroneous reporting, emails with CRI, his police report information, and a copy of his filed FTC Report.

33.    Plaintiff mailed his detailed dispute letter to Trans Union via USPS Certified Mail (9589 0710 5270 2629 2523 62).

34.    On or about August 27, 2025, Plaintiff received dispute results from Trans Union advising that the CRI Accounts had been deleted. Despite Plaintiff's request, Trans Union did not provide Plaintiff with a full copy of his credit report.

35.    On or about September 30, 2025, Plaintiff obtained a copy of his Trans Union report and to his relief the CRI Accounts were indeed no longer reporting. Plaintiff was led to believe that an actual investigation had been conducted and that Trans Union had deemed the CRI Accounts were fraudulent.

36.    On or about October 24, 2025, Plaintiff received notice from Trans Union that the previously deleted CRI Accounts had been verified and reinserted. Trans Union did not provide a reason why they decided to reinsert the fraudulent CRI Accounts.

37.     Trans Union allowed CRI to certify the Accounts were valid without any evidence of documentation or conversations between humans as to the validity of the reinsertion.

38.     No human at Trans Union reviewed the certificate of validation and simply reinserted the CRI Accounts.

39.     On or about November 5, 2025, Plaintiff reviewed his three-bureau credit report comparison on the Trans Union website and confirmed that Trans Union had reinserted the CRI Accounts while Equifax and Experian continued to suppress them.

40.     On or about November 5, 2025, Plaintiff mailed an additional detailed dispute letter to Trans Union, again explaining that the CRI Accounts were fraudulent and needed to be investigated. Plaintiff requested a new investigation into the CRI Accounts.  In the letter, Plaintiff requested a copy of his credit report. To confirm his identity, Plaintiff attached copies of his Florida driver's license and social security card. Plaintiff also attached images of the dispute results, erroneous reporting, emails with CRI, his police report information, and a copy of his filed FTC Report.

41.     Plaintiff mailed his detailed dispute letter to Trans Union via USPS Certified Mail (9589 0710 5270 2629 2513 34).

42.    On or about November 12, 2025, Plaintiff received a response from Trans Union advising that his fraud block request had been denied because his description of identity theft was too vague.

43.    Given that this is a case of identity theft or mixed file, Plaintiff's knowledge of how this occurred is extremely limited. Plaintiff provided sufficient information and description of his efforts to report the CRI Accounts as fraudulent as required by the FCRA.

44.    Plaintiff did not receive any further responses or dispute results from Trans Union, nor did he receive a full copy of his credit report.

45.    On or about December 11, 2025, Plaintiff obtained a copy of his Trans Union report and observed that the CRI Account ending in *2899 reflected a balance of $3,681 and the CRI Account ending in *2999 reflected a balance of 6,520. Such continued reporting negatively affected Plaintiff's debt-to-income ratio. Plaintiff also observed that the Frederick, Maryland address was still being reported.

46.    Trans Union failed to do any independent investigation into Plaintiff's disputes, but rather parroted information it received from the furnisher.

47.    Trans Union never attempted to contact Plaintiff during the alleged investigation.

48.    Upon information and belief, Trans Union notified CRI of Plaintiff's dispute. However, CRI failed to conduct a reasonable investigation and merely

compared its own erroneous data to that provided by Trans Union in connection with the dispute investigation.

49.     Due to the continued inaccurate reporting, on or about December 17, 2025, Plaintiff mailed anther detailed dispute letter to Trans Union, again explaining that the CRI Accounts were fraudulent and needed to be investigated. In the letter, Plaintiff requested a copy of his credit report. To confirm his identity, Plaintiff attached copies of his Florida driver's license and social security card. Plaintiff also attached images of the dispute results, erroneous reporting, emails with CRI, his police report information, and a copy of his filed FTC Report. Further, Plaintiff included a copy of his signed and submitted False Certification: Identity Theft application for the loans to be discharged.

50.     Plaintiff mailed his third detailed dispute letter to Trans Union via USPS Certified Mail (9589 0710 5270 2629 2545 64).

51.     As of the filing of this Complaint, Plaintiff has not received any dispute results as to his third dispute letter.

52.     As of the filing of this Complaint, Trans Union continues to be the only CRA reporting the CRI Accounts. It is clear that Trans Union's alleged investigations are not being conducted properly.

53.     Plaintiff continues to suffer as of the filing of this Complaint with the Defendants' reluctance to conduct a thorough investigation into his disputes or otherwise make his credit file accurate.

54.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

i.     Monies lost by attempting to fix his credit. Plaintiff has suffered actual damages in postage paid, wasted ink and paper, wasted time, and lost wages due to missing work in attempts to cure the reporting errors;

ii.     Loss of time attempting to cure the errors;

iii.     Mental anguish, added stress, aggravation, embarrassment, emotional distress, sleepless nights, headaches, fluctuations in weight, and other related impairments to the enjoyment of life; Plaintiff is being physically affected by Defendants' actions;

iv.     Apprehensiveness to apply for new credit due to the fear of rejection;

v.     Defamation and Plaintiff's information has been published to third parties including but not limited to FICO to calculate Plaintiff's credit score.

vi.    Defendant's have also published erroneous information to the CFPB

by failing to resolve their mistakes on Plaintiff's credit reports.

### CAUSES OF ACTION

### COUNT I
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Trans Union LLC (Negligent)

55.    Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

56.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

57.    Trans Union allowed for a furnisher to report an inaccurate and erroneous account to Plaintiff's credit file.

58.    Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

59.    Trans Union selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

60.    Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

12

61.     As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

62.     The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

63.     Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Andrew Phillip Iverson, respectfully requests that this Court award actual damages against Defendant, Trans Union LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT II
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Trans Union LLC (Willful)

64.     Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

13

65.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

66.     Trans Union allowed for a furnisher to report an inaccurate and erroneous account to Plaintiff's credit file.

67.     Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

68.     Trans Union selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

69.     Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

70.     As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

71.    The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

72.    Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Andrew Phillip Iverson, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Trans Union LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT III
### Violation of 15 U.S.C. § 1681i as to
### Defendant, Trans Union LLC (Negligent)

73.    Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

74.    After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit

file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

75.     Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Trans Union failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

76.     Plaintiff provided Trans Union with the information it needed to confirm that he was a victim of identity theft or mixed file. Trans Union ignored this information and failed to conduct a thorough investigation into his disputes or otherwise make his credit file accurate.

77.     As a direct result of this conduct, action and/or inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

78.     The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

79.     Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to § 1681o.

WHEREFORE, Plaintiff, Andrew Phillip Iverson, respectfully requests that this Court award actual damages against Defendant, Trans Union LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT IV**
**Violation of 15 U.S.C. § 1681i as to**
**Defendant, Trans Union LLC (Willful)**

80.     Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

81.     After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

82.    Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Trans Union failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

83.    Plaintiff provided Trans Union with the information it needed to confirm that he was a victim of identity theft or mixed file. Trans Union ignored this information and failed to conduct a thorough investigation into his disputes or otherwise make his credit file accurate.

84.    As a direct result of this conduct, action and/or inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

85.    The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

86.    Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to § 1681n.

WHEREFORE, Plaintiff, Andrew Phillip Iverson, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Trans Union LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT V
### Violation of 15 U.S.C. § 1681g as to
### Defendant, Trans Union LLC (Negligent)

87.    Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

88.    After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681g by failing to disclose to Plaintiff all information in Plaintiff's credit file.

89.    Plaintiff provided to Trans Union appropriate and sufficient proofs of identity to allow Trans Union to create a high degree of confidence in knowing the identity of Plaintiff.

90.    Despite the sufficient proofs of identification produced by Plaintiff, Trans Union refused to conduct any independent investigations into Plaintiff's

disputes and provide any documentation, his credit report, or dispute results to Plaintiff.

91.     As a direct result of this conduct, action and/or inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

92.     The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

93.     Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

94.     WHEREFORE, Plaintiff, Andrew Phillip Iverson, respectfully requests that this Court award actual damages against Defendant, Trans Union LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT VI**
**Violation of 15 U.S.C. § 1681g as to**
**Defendant, Trans Union LLC (Willful)**

95.    Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

96.    After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681g by failing to disclose to Plaintiff all information in Plaintiff's credit file.

97.    Plaintiff provided to Trans Union appropriate and sufficient proofs of identity to allow Trans Union to create a high degree of confidence in knowing the identity of Plaintiff.

98.    Despite the sufficient proofs of identification produced by Plaintiff, Trans Union refused to conduct any independent investigations into Plaintiff's disputes and provide any documentation, his credit report, or dispute results to Plaintiff.

99.    As a direct result of this conduct, action and/or inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

100.    The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

101.    Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

102.    WHEREFORE, Plaintiff, Andrew Phillip Iverson, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Trans Union LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT VII
### Violation of 15 U.S.C. § 1681 s-2(b) as to
### Defendant, Central Research, Inc. (Negligent)

103.    Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

104.    CRI furnished inaccurate account information to Trans Union and through Trans Union to all of Plaintiff's potential lenders.

105.    After receiving Plaintiff's disputes, CRI violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the erroneous account; (ii) failing to review all relevant information regarding same; (iii) failing to accurately respond to Trans Union; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

106.   Plaintiff provided all the relevant information and documents necessary for CRI to have identified that the account did not belong to Plaintiff.

107.   CRI did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in its representations. It also had sufficient evidence by which to have verified that Plaintiff was not the responsible party, including information provided to CRI by Plaintiff in connection with his disputes of the account in question. Instead, it knowingly chose to follow procedures which did not review, confirm, or verify the account belonged to Plaintiff. Further, even if it would attempt to plead ignorance, it had the evidence and information with which to confirm and recognize that Plaintiff was a victim of identity theft or mixed file.

108.   CRI violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

109.   As a direct result of this conduct, action, and/or inaction of CRI, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

110.   The conduct, action, and inaction of CRI was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 USC § 1681o.

111.   Plaintiff is entitled to recover costs and attorney's fees from CRI in an amount to be determined by the Court pursuant to 15 USC § 1681o.

WHEREFORE, Plaintiff, Andrew Phillip Iverson, respectfully requests that this Court award actual damages against Defendant, Central Research, Inc.; jointly and severally; award Plaintiff his attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

## COUNT VIII
### Violation of 15 U.S.C. § 1681 s-2(b) as to
### Defendant, Central Research, Inc. (Willful)

112.   Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

113.   CRI furnished inaccurate account information to Trans Union and through Trans Union to all of Plaintiff's potential lenders.

114.   After receiving Plaintiff's disputes, CRI violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the erroneous account; (ii) failing to review all relevant information regarding same; (iii) failing to accurately respond to Trans Union; and (iv) failing to permanently and lawfully

correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

115. Plaintiff provided all the relevant information and documents necessary for CRI to have identified that the account did not belong to Plaintiff.

116. CRI did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in its representations. It also had sufficient evidence by which to have verified that Plaintiff was not the responsible party, including information provided to CRI by Plaintiff in connection with his disputes of the account in question. Instead, it knowingly chose to follow procedures which did not review, confirm, or verify the account belonged to Plaintiff. Further, even if it would attempt to plead ignorance, it had the evidence and information with which to confirm and recognize that Plaintiff was a victim of identity theft or mixed file.

117. CRI violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

118. As a direct result of this conduct, action, and/or inaction of CRI, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish,

humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

119.   The conduct, action, and inaction of CRI was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

120.   Plaintiff is entitled to recover costs and attorney's fees from EAS in an amount to be determined by the Court pursuant to 15 USC § 1681n.

WHEREFORE, Plaintiff, Andrew Phillip Iverson, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Central Research, Inc.; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Andrew Phillip Iverson, respectfully requests that this Court award judgment for actual, statutory, compensatory, and punitive damages against Defendants, Trans Union LLC; and Central Research, Inc., jointly

and severally; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

DATED this 18th day of December, 2025.

Respectfully submitted,

**/s/ Octavio Gomez**
Octavio "Tav" Gomez, Esq.
Florida Bar #: 0338620
Georgia Bar #: 617963
Pennsylvania Bar #: 325066
The Consumer Lawyers PLLC
501 E. Kennedy Blvd, Suite 610
Tampa, Florida 33602
Cell: (813) 299-8537
Facsimile: (844) 951-3933
Tav@theconsumerlawyers.com

**/s/ Frank H. Kerney, III**
Frank H. Kerney, III, Esq.
Florida Bar #:88672
Tennessee Bar #: 035859
The Consumer Lawyers PLLC
501 E. Kennedy Blvd., Ste 610
Tampa, FL 33602
Cell: (813)951-8278
Facsimile: (844)951-3933
Primary Email:
Frank@theconsumerlawyers.com
Secondary Email:
Lisa@theconsumerlawyers.com

*Attorneys for Plaintiff*